IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JUSTIN J. JOHNSON,

        Plaintiff,

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No.09-127-AA
OPINION AND ORDER

WILLIAM H. HOLMES
CHRISTOPHER M. HEAPS
Stoel Rives LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR 97024
        Attorney for Plaintiff

DWIGHT C. HOLTON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

1     - OPINION AND ORDER

THOMAS M. ELSBERRY
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
        Attorneys for Defendant

AIKEN, Chief Judge:

        Plaintiff Justin Johnson ("Johnson") seeks judicial review of the Social Security

Commissioner's final decisions ceasing his eligibility for Childhood Disability Insurance Benefits

under Title XVI of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C.

§§ 405(g) and 1383(c). The Commissioner's decision should be REVERSED and REMANDED for

the reasons below.

## BACKGROUND

        Johnson was awarded child disability insurance benefits due to the effects of fetal alcohol

syndrome in May 2001. Tr. 22.[1]  The Commissioner found that Johnson's disability ceased on

January 1, 2006. Tr. 40-41, 567-68. Johnson appealed this determination, and a hearing was held

before an ALJ on December 6, 2006. Tr. 570-99. The ALJ subsequently issued a decision on March

8, 2007, finding that Johnson was no longer disabled. Johnson presently appeals, and the

Commissioner moves to remand the matter for further proceedings.

## DISABILITY ANALYSIS

        The Commissioner has established procedures for evaluating initial disability claims and

evaluating disability cessation.

------

        [1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer on July 12, 2007 (docket #16).

2    - OPINION AND ORDER

## A.     Initial Disability Determinations

In construing initial disability determinations for children under Title XVI, the Commissioner engages in a three-step sequential process. 20 C.F.R. § 416.924(a). First, the ALJ determines if the child is performing substantial gainful activity. If he is, the child is not disabled. *Id.* Next, the ALJ determines if the child has an impairment or combination of impairments that are "severe" under the Commissioner's regulations. If the child does not have such a severe impairment, he is not disabled. *Id.* Finally, the ALJ determines whether the severe impairment "meets, medically equals, or functional equals" a "listing" in the Commissioner's regulations. *Id.*, 20 C.F.R. § 416.924(d). If the impairment is determined to equal a listed impairment, the child is disabled. *Id.*

## B.     Disability Cessation Determinations for Children

Children receiving SSI benefits receive periodic review. 20 C.F.R. § 416.994a(a); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1003 (9th Cir. 2005). In order to cease an existing benefit entitlement, the Commissioner must make specific findings. 20 C.F.R. § 416.994(b). Here the Commissioner again engages in a sequential process encompassing three steps. *Id.*

First, the Commissioner determines if "medical improvement" has occurred. 20 C.F. R. § 416.994a(b)(1). "Medical improvement" for children is "any decrease in the medical severity of your impairments(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." *Id.* § 416.994a(c). Second, the Commissioner determines if the child's impairment continues to "meet or equal the severity of the listed impairment that it met or equaled before." *Id.* § 416.994a(b)(2). Finally, the Commissioner determines if the child is currently disabled under 20 C.F.R. § 416.924(c) and (d). *Id.* § 416.994a(b)(3).

///

3      - OPINION AND ORDER

## THE ALJ'S FINDINGS

The ALJ found that Johnson's impairments functionally equaled the Commissioner's listings as of October 2, 2001. The ALJ first found that Johnson's medically determinable impairments were "developmental delays in physical and cognitive functioning secondary to effects of Fetal Alcohol Syndrome." Tr. 24. The ALJ subsequently found that Johnson experienced "medical improvement" as of January 1, 2006 (Tr. 25), and found that Johnson's impairments no longer functionally equaled the listings as of that date. Tr. 27.

The ALJ also found that, as of January 1, 2006, Johnson had both a cognitive disorder and Attention Deficit Hyper Activity Disorder ("ADHD"), which the ALJ found "severe." Tr. 36. However, the ALJ found that these impairments did not meet or equal a listed impairment. Tr. 37. The ALJ therefore found Johnson no longer entitled to benefits as of January 1, 2006. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the

4     - OPINION AND ORDER

Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Johnson contends that the ALJ erroneously evaluated the opinions of an examining psychologist and the medical expert, erroneously evaluated specific impairments, and failed to find that he continued to meet the Commissioner's listings. The Commissioner moves to remand the matter for further proceedings.

### I. Medical Evidence

Johnson challenges the ALJ's evaluation of examining psychologist Dr. Guastadisegni and medical expert Dr. Grossman. Johnson also challenges the ALJ's findings regarding his cognitive disorder, ADHD, age-appropriate functioning, and concentration, persistence, and pace.

### A. Standards

The ALJ must ordinarily give a treating physician's opinion greater weight than an examining physician's opinion, and in turn accord greater weight to an examining physician's opinion than to that of a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). A reviewing physician's opinion may not constitute substantial evidence justifying rejection of a treating or examining physician's opinion unless it is "supported by other evidence of the record and . . .

consistent with it." *Lester*, 81 F.3d at 838, *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999)

(citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

### B.    Examining Psychologist Dr. Guadstadisegni

#### a.    Dr. Guadstadisegni's's Opinion

Examining psychologist Dr. Guadstadisegni performed a neuropsychological examination

of Johnson at his mother's request on February 27 and March 6, 2006.    Tr. 448-57.    Dr.

Guadstadisegni reviewed Johnson's records, conducted a clinical interview, and administered

numerous psychological tests. *Id.*

Dr. Guadstadisegni assessed Johnson's IQ at 108, and diagnosed a cognitive disorder, a

learning disorder, ADHD secondary to fetal alcohol effects (Tr. 457) and a sensory dysfunction. Tr.

455. Dr. Guadstadisegni explained that cognitive testing "has identified objective neurocognitive

impairments that are organic in nature," and that Johnson "was born with a brain disorder that affects

his behavior, social skills, and his ability to problem solve in the moment." Tr. 454.  This disorder

also affects Johnson's executive function skills and his sensory abilities. *Id.*  Dr. Guadstadisegni

went on to stress that Johnson will need significant support to prevent deterioration in his social,

behavioral, and academic functioning, and suggested that Johnson be evaluated for special education

at school. *Id.*  Finally, Dr. Guadstadisegni stated that Johnson will require ongoing occupational

therapy for his sensory disorder, and will require regular breaks in a school setting. Tr. 455.

#### b.    The ALJ's Evaluation of Dr. Guadstadisegni's Clinical Findings

The ALJ first cited Dr. Guadstadisegni's finding that Johnson exhibited an IQ measuring 108,

which is within average range, and found that Dr. Guadstadisegni "down plays the average cognitive

testing results" by "stating that the child has significant difficulties in his abilities to attend and

concentrate on complex tasks requiring multitasking and planning with inhibited conditioned responses." Tr. 26. The ALJ subsequently determined that Dr. Guadstadisegni's "ignores his own clinical findings of average intellectual functioning and his own opinion that the child does not have an oppositional defiant disorder." *Id.*

Dr. Guadstadisegni discussed Johnson's 108 IQ, stating that "this suggests that he will benefit from treatment and interventions." Tr. 454. Dr. Guadstadisegni made no indication that Johnson's IQ detracted from his opinion regarding Johnson's diagnoses, limitations, and special needs. Dr. Guadstadisegni also did not find that Johnson has "average" cognitive test results, instead finding that Johnson has a clearly identifiable cognitive disorder. Tr. 448-57; 525-27. Therefore, the ALJ's findings reasoning that Dr. Guadstadisegni misconstrued his own assessment regarding effects of Johnson's IQ and his cognitive testing is not based upon the record. The ALJ's analysis is not sustained.

### c.    Dr. Guadstadisegni's Reliance Upon Lay Testimony

The ALJ also rejected Dr. Guadstadisegni's opinion because it was based in part upon reporting of Johnson's mother, Aileen Johnson. Tr. 26. The ALJ noted that Dr. Guadstadisegni relied "significantly" on Aileen Johnson's reports and subsequently found her testimony that she attempted to secure ADHD medication for her son "not credible." Tr. 26. The ALJ did not explain why he found Aileen Johnson's testimony not credible.

The ALJ has an affirmative duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 - 919 (9th Cir. 1993).

7    - OPINION AND ORDER

The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462,1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467. While lay witness testimony never establishes disability, the ALJ may consider lay witness evidence regarding social functioning in assessing a claimant under the listings. *Id.*

The ALJ's failure to explain his rejection of Aileen Johnson's testimony is clearly erroneous. The ALJ may not reject lay witness testimony without providing reasons germane to the witness. *Id.* Further, this court may not affirm an ALJ's silent rejection of lay testimony if that testimony is favorable to the claimant. *Stout v. Barnhart*, 454 F.3d 1050, 1056 (9th Cir. 2005). For these reasons, the ALJ's rejection of Aileen Johnson's testimony, and his subsequent rejection of Dr. Guadstadisegni's opinion so far as it is predicated upon her testimony is not sustained.

In summary, the ALJ's rejection of Dr. Guadstadisegni's opinion is not sustained.

## B. Medical Expert Dr. Grossman

### a. Dr. Grossman's Testimony

Pediatrician Dr. Grossman testified as a medical expert at Johnson's December 2006 hearing before the ALJ. Tr. 576-95. Dr. Grossman first summarized Disability Determination Services[2] findings that Johnson experienced medical improvement. Tr. 577. Dr. Grossman also noted that Dr. Guadstadisegni's report showed that Johnson had an IQ of 108, and concluded that therefore Johnson "obviously did not have any particular cognitive issues." Tr. 578. Dr. Grossman subsequently

---

[2] Disability Determination Services is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

summarized nurse practitioner Sharon Butcher's evaluation, stating that Butcher reported that Johnson was no longer receiving early intervention services after age three, and that Johnson "showed a lovely ability to attend when given adult focus one-to-one in attention." Tr. 580. Dr. Grossman also noted that Butcher described Johnson's speech as "relatively age-appropriate," that Johnson made adequate eye contact, and that while Johnson did not presently meet Ausperager's syndrome diagnostic criteria, this possibility should be considered as Johnson grows older. *Id.*

Finally, Dr. Grossman addressed Dr. Guadstadisegni's evaluation in some detail. Dr. Grossman stated that Dr. Guadstadisegni's examination protocol was "more appropriate for an older child," and that Dr. Guadstadisegni's use of a community skills evaluation was not normal procedure for a six-year old child. Tr. 584, 587. Dr. Grossman concluded, "I don't know that I would consider this section of the examination particularly valid." Tr. 587.

### b.   The ALJ's Analysis of Dr. Grossman's Report

The ALJ cited Dr. Grossman's testimony that Dr. Guadstadisegni's "evaluation and testing tools were somewhat inappropriate," specifically Dr. Guadstadisegni's reference to shopping and cooking skills. Tr. 26. The ALJ also noted Dr. Grossman's opinion that no clinical correlation arose to explain the alleged discrepancy between Johnson's IQ test results Dr. Guadstadisegni's cognitive disorder and learning disorder diagnoses. Finally, the ALJ cited Dr. Grossman's testimony that Johnson's IQ and reading ability "clearly reflects that the child does not have any cognitive issues now." Tr. 27.

Dr. Guadstadisegni submitted a letter to the record approximately two weeks after Johnson's hearing explaining his age-adjusted examination protocol in some detail. Dr. Guadstadisegni specifically stated that his examinations were standard for children with cognitive impairments. Tr.

9     - OPINION AND ORDER

526. Dr. Guadstadisegni additionally stated that he evaluates approximately one hundred and fifty children per year and that pediatricians frequently deferred to him regarding such evaluations. Tr. 526-27. Though the ALJ had notice of this material at the hearing, and additionally held the record open for receipt of it (Tr. 595-96), he nonetheless failed to address it.

The ALJ must generally give greater weight to specialist opinions than to the opinion of a general practitioner. 20 C.F.R. § 416.927(d)(6). Furthermore, the opinion of a nonexamining physician cannot by itself constitute substantial evidence justifying rejecting of either a treating or examining physician. *Lester*, 81 F.3d at 831. Here the ALJ rejected specialist Dr. Guadstadisegni in favor of a non-examining medical expert. This analysis contravenes the applicable legal standards and is not sustained.

## REMAND

The ALJ erroneously evaluated Dr. Guadstadisegni's opinion, Aileen's Johnson's testimony, and the opinion of medical expert Dr. Grossman. The ALJ's findings that Johnson experienced medical improvement is not based upon the record or the correct legal standards.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292). In such circumstances the reviewing court must credit the improperly rejected evidence. *Vasquez v. Astrue*, 547 F.3d 1101, 1106-07 (9th Cir. 2008) (*en banc review denied*, 572 F.3d 586 (9th Cir. 2009)).

10     - OPINION AND ORDER

The ALJ failed to provide legally sufficient reasons for rejecting Dr. Guadstadisegni's opinion and the associated testimony of Aileen Johnson. In such circumstances, the improperly rejected evidence should be credited. *Hammock v. Bowen*, 879 F.2d 498, 503-04 (9th Cir. 1989) (crediting as true erroneously rejected claimant testimony and physician opinions where treating physicians's opinions supported claimant's testimony). The court therefore credits this evidence and now discusses the effect of the credited testimony and medical opinions under the second and third prongs of the *Harman* analysis.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman* prong. *Harman*, 211 F.3d at 1178. The record before this court shows medical treatment encompassing nearly all of Johnson's life up until the point of his hearing before the ALJ. The Commissioner does not assert that the record is not fully developed. Def.'s Br. Though the Commissioner would like to procure an additional medical expert upon further proceedings, the Commissioner cites no authority mandating such an arrangement. *Id.* at 6. 5. The court therefore finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires award of benefits after the improperly rejected evidence is credited. *Harman*, 211 F.3d at 1178. Under the Commissioner's regulations, a child is disabled the sequential proceedings if he meets a "listed disorder." 20 C.F.R. § 416.924a. In order to meet Listing 112.02 a child must meet two prongs. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.02. First, the child must show "medically documented persistence" of at least one feature listed in the 112.02(A). Second, the child must subsequently show that he meets at least two elements of the "B" criteria promulgated in the Listing. *Id.*

11    - OPINION AND ORDER

Dr. Guadstadisegni's opinion shows that Johnson meets five of the 112.02 "A" requirements. Dr. Guadstadisegni stated that Johnson has developmental delays (Tr. 454), a perceptual, or sensory, disorder (Tr. 452), an impulse control disorder (Tr. 450), and a cognitive disorder. Tr. 452, 457. The issue of whether Johnson meets listing 112.02 consequently turns upon whether Johnson meets the 112.02(B) requirements. To meet the "B" requirement a child must show marked impairment in age-appropriate functioning in at least two of the following: cognitive/communicative functioning, social functioning, personal functioning, or marked impairment in concentration, persistence, and pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.02(B). Dr. Guadstadisegni repeatedly and clearly stated that Johnson has marked impairments in cognitive functioning (Tr. 452, 457) as well as personal functioning. Tr. 526. These findings meet the 112.02 "B" criteria.

Crediting Dr. Guadstadisegni's opinion and Aileen Johnson's testimony therefore establishes that Johnson meets the "A" and "B" criteria promulgated by the Commissioner under Listing 112.02. Consequently, Johnson remains disabled under the Commissioner's regulations.

## ORDER

For these reasons, this Court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and award of benefits consistent with this opinion.

IT IS SO ORDERED.

Dated this ___ day of May, 2010.

Ann Aiken
United States District Judge

12    - OPINION AND ORDER